**APPEAL NO. 21-2019**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

EARL DONALD BAKER,

Plaintiff – Appellee,

v.

SMITH & WESSON, INC., f/k/a/ Smith & Wesson Corp.,

Defendant - Appellant

**APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

**SUPPLEMENTAL RESPONSE BY PLAINTIFF-APPELLEE**

Ben Rudolf
Murphy & Rudolf, LLP
One Mercantile Street
Worcester, MA  01609
Telephone:508.425.6330
Brudolf@murphyrudolf.com
(*Attorney for Plaintiff/Appellee*)

John Y. Lee
Lee& Breen, LLC
188 Industrial Drive, Suite 403
Elmhurst, IL 60126
Telephone: 312.241.1420
 jlee@leebreenlaw.com
(*Attorney for Plaintiff/Appellee*)

i

# **TABLE OF CONTENTS**

**SECTION OF BRIEF**                                        **PAGE NO**.

**TABLE OF AUTHORITIES** ………..……………………………          iii

**I.  INTRODUCTION** …………..…………………………………          1

**II.  ARGUMENT** …………………….........................………          5

  **A. The plain language of §1415A(a)(1) requires that the
    phrase "relating to fraud against shareholders" modify
    only the last part of §1514A(a)(1).** ……………………..          5

  **B. The captions relating to §1514A do not require that the
    "relating to fraud against shareholders" language
    modify all three phrases used in §1514A(a)(1).** ……….          15

  **C. The legislative history does not support the argument
    that the "relating to fraud against shareholders" language
    modifies all three phrases used in §1514A(a)(1).** ………          16

  **D. The sections of the Foreign Corrupt Practices Act at issue,
    15 U.S.C. §78m(b)(2) and (5), are provisions "relating to
    fraud against shareholders" and, as such, while the Court's
    resolution of the current issue is "relevant" to the issues
    before it, such resolution is not "necessary" to resolve
    this case.** …………………………………………………          19

**III.  CONCLUSION**…………………………………………………..          24

**CERTIFICATE OF COMPLIANCE** …………………………….          26

**CERTIFICATE OF SERVICE** ……………………………………          27

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>                                                          <u>PAGE NO</u>.

*Barnhart v. Thomas*, 540 U.S. 20 (2003) …………………….    7

*Day v. Staples*, 555 F.3d 42 (1st Cir. 2009) ………………….    1,5,18

*Feldman v. Law Enforcement Assocs. Corp*,
779 F.Supp.2d 472, 492 (E.D.N.C. 2011) ……………………    11

*Goncalves v. Reno*, 114 F.3d 110, 127 (1st Cir. 1998) ……….    15

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
530 U.S. 1, 6 (2000) ………………………………………….    6

*Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 186 F.3d 210, 215
(2d Cir. 1999) …………………………………………………    6

*Lawson v. FMR LLC*, 571 U.S. 429 (2015) …………………..    Passim

*Lawson v. FMR LLC*, 670 F.3d 61, 75 (1st Cir. 2012) ……….    8

*Lawson v. FMR LLC*, 724 F.Supp.2d 141, 159
(D.Mass. 2010) ………………………………………………..    23

*Leznik v. Nektar Therapeutics, Inc.*, 2007 DOLSOX LEXIS 96
(Dept. of Labor SAROX Nov. 16, 2007) ……………………..    11

*Livingston v. Wyeth*, 520 F.3d 244 (4th Cir. 2008) …………..    13,18

*Lockheed Martin Corp v. Admin. Review Bd.*, 717 F.3d 1121
(10th Cir. 2013) ………………………………………………    8

*Morales v. TWA*, 504 U.S. 374, 384 (1992) …………………..    1,20

*Nat'l Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 78-79
(1st Cir. 2006) ………………………………………………..    1,20

*O'Mahoney v. Accenture Ltd.*, 537 F.Supp.2d 506, 516
(S.D.N.Y 2008)……………………………………………….    6

*Roberts v. Sea-Land Servs.*, 566 U.S. 93 (2012) …………….    1

*Robinson v. Shell Oil Co.*, 519 U.S.337 (1997)  ……………..    15

*SEC v. World-Wide Coin Inv.*, 567 F. Supp. 724, 746
(N.D. Ga. 1983) ……………………………………………..    18

*Smith v. Corning, Inc.*, 496 F.Supp.2d 244, 248-50
(W.D.N.Y. 2007) ……………………………………………    11

*Thibideau v. Wal-Mart Stores, Inc.*, 2020 DOL Ad. Rev. Bd.
LEXIS 326 (December 17, 2020) …………………………..    12,18,22

*Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528 …    15

*United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241
(1989) ………………………………………………………….    6

*United States Nat'l Bank v. Independent Ins. Agents of Am., Inc.*,
508 U.S. 439, 455 (1993) …………………………………..    6

*UPS v. Flores-Galarza*, 318 F.3d 323, 335 (1st Cir. 2003) …    1, 6

*Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1001
(9th Cir. 2009) ………………………………………………    18

*Wadler v. Bio-Rad Labs*, 916 F.3d 1176 (9th Cir. 2019) ……    5

*Yang v. Navigators Group, Inc.*, 18 F.Supp.3d 519
(S.D.N.Y. 2014) ……………………………………………….    10

## STATUTES AND REGULATIONS

15 U.S.C.  § § 78m(b)(2) and (5) …………………………    Passim

18 U.S.C.  § 1514A, *et seq.*  ………………………………….    Passim

iv

13 C.F.R. §240.13b2-1 ………………………………………. 22

17 C.F.R. §240.13a-15(f) …………………………………. 22

## **LEGISLATIVE HISTORY**

148 Cong. Rec. S1783, S1791 (daily ed. March 12, 2022)
(Sen Leahy) …………………………………………….. 14

149 Cong. Rec. S1725(daily ed. Jan. 29, 2003)
(Sen. Leahy) ………………………………………………… 14,16

S. Rep. No. 95-114 (1977) ………………………………….. 21

## I.    INTRODUCTION

The Court ordered additional briefs on the following issues:  (a) the proper interpretation of the phrase "relating to fraud against shareholders" and which of the three phrases that phrase modifies in 18 U.S.C. §1514A(a)(1); (b) the relevance of question (a) to the issues before the Court; and (c) whether it is necessary to resolve question (a) to resolve this case.  In response to question (a), Appellee submits the following:

**(a)    The phrase "relating to fraud against shareholders" should be interpreted broadly and modifies only the third prong of § 1514A(a)(1) regarding "any provision of Federal law."**

First, the unambiguous language and sentence structure of §1514A(a)(1) plainly leads to the conclusion that the phrase "relating to fraud against shareholders" modifies only the phrase which immediately precedes it – "any provision of Federal law."  S&W's tortured reading would render much of the statutory language superfluous which is not favored in statutory interpretation. *Roberts v. Sea-Land Servs.,* 566 U.S. 93 (2012).

S&W misrepresents the First Circuit's decision in *Day v. Staples*, 555 F.3d 42 (1st Cir. 2009).  S&W argues at page 7 of its Supplemental Brief that "[t]his Court recognized in *Day* that Section 1514A claims must be founded on reports of violations of a listed criminal law, SEC rule or regulation, or securities law ***involving***

***shareholder fraud***." (Emphasis in original). The *Day* decision does not contain any such "recognition". To the contrary, the *Day* opinion specifically implied the opposite. In discussing the types of communications that are protected, First Circuit in *Day* noted that only communications that relate to "three broad categories" are included, specifically, "(1) a violation of a specified federal criminal fraud statutes …; (2) a violation of any rule or regulation of the SEC; and/or (3) a violation of any provision of federal law relating to fraud against shareholders." *Id*. at 55. *Day* went on to reason that "[t]he first and third categories share a common denominator: that the conduct involves 'fraud," and ***many*** of the second category claims (violations of SEC rules or regulations) will also involve fraud." *Id*. (Emphasis added.) Although in *dicta*, *Day* Court's recognition that "many" SEC rule violation cases will involve fraud directly contradicts S&W claim of a "recognition" by that Court that ***every*** such communication involve "shareholder fraud."

Further, although §1514A is captioned "Civil action to protect against retaliation in fraud cases," and the public law section, §806 of Sarbanes-Oxley, is captioned "Protection for Employees of Publicly Traded Companies who Provide Evidence of Fraud," as noted by Justice Ginsburg in *Lawson v. FMR LLC*, 571 U.S. 429, 446 (2014) in addressing §1514A, "where, as here, the statutory text is complicated and prolific, headings and titles can do no more than indicate the provisions in a most general manner." (Internal quotations and citations omitted).

2

The Supreme Court went on to recognize that the captions at issue do not require that all reported violations of "rules and regulations of the SEC" relate to fraud. Rather, as the Supreme Court noted, even though the various captions at issue referenced "employees of publicly traded companies" those captions did not limit the application of the statute to *only* employees of publicly traded companies just as "the activity protected under §1514A is not limited to 'provid[ing] evidence of fraud' [as stated in the caption]; it also includes reporting violations of SEC rules and regulations." *Id*.

Finally, the legislative history and purpose of the SOX statute, which includes not only protection of shareholders, but also protection of the financial markets, supports the conclusion that "relating to fraud against shareholders" modifies only the last phrase (the third prong) in § 1514A(a)(1). Congress intended to encourage the reporting of public companies engaging in the various types of fraud enumerated in §1514A or of the violation of any rule or regulation of the SEC, because such conduct by public companies is a threat to shareholders and the public's confidence in the markets. SEC "rules and regulations" do not all address direct "shareholder fraud"; many do, but they also protect shareholders generally and therefor protect the financial markets.

In response to question (b) and (c), Appellee submits:

**(b) and (c) Although the issue of whether "relating to fraud against the shareholders" is not directly relevant to the issue certified by the District Court, it is relevant to the potential disposition of this case.  However, because the District Court's denial of S&W's summary judgment motion was correct regardless of this Court's decisions on the certified question and the separate issue of the application of the "relating to fraud against shareholders" language, resolution of these issues by this Court is not "necessary" to "resolve" this case.**

There are three possible outcomes based on the initial certified question and the supplemental question regarding the "relating to fraud against shareholders" language.  1)  This Court could find that Congress' reference to "rules and regulations of the SEC" includes 15 U.S.C. §78m(b)(2) and (5) and is not modified by the "relating to fraud against shareholders" language.  If so, the District Court's denial of S&W summary judgment motion was correct.  2)  This Court could find that Congress' reference to "rules and regulations of the SEC" includes 15 U.S.C. §78m(b)(2) and (5) but is modified by the "relating to fraud against shareholders" language.  Because 15 U.S.C. §78m(b)(2) and (5) does "relat[e] to fraud against shareholders," the District Court's denial of S&W summary judgment motion would still be appropriate. And finally, 3) this Court could find that Congress' reference to "rules and regulations of the SEC" does not include 15 U.S.C. §78m(b)(2) and (5).  Because 15 U.S.C. §78m(b)(2) and (5) does "relat[e] to fraud against shareholders,"

there can be no dispute that those provisions would fall within the last prong of §1514A(a)(1) as a "provision of Federal law relating to fraud against shareholders." As such, the District Court's denial of S&W's summary judgment motion would still be correct.[1]

II.    **ARGUMENT**

**A.    The plain language of §1415A(a)(1) requires that the phrase "relating to fraud against shareholders" modify only the third prong of §1514A(a)(1).**

The First Circuit has already addressed, although indirectly, the precise issue the parties have been directed to address.  In *Day*, the Court distinguished between the first prong of enumerated violations in §1514A(a)(1) (violation of specified federal criminal fraud statutes) and the third prong (violation of any provision of federal law relating to fraud against shareholders) from the second prong (violations of any rule or regulation of the SEC).  The *Day* Court recognized that the first and

---

[1] This precise issue was not addressed by either party as part of the summary judgment motion. S&W represents in its Supplement Brief that Appellee "concedes he did not make reports to S&W concerning shareholder fraud."  (S&W Supplemental Brief, p. 5).  This is not accurate.  In his Response to the summary judgment motion Appellee stated that he did not premise his SOX claim on the reporting of actual "shareholder fraud" (for example violation of Rule 10-b) and therefore did not have to allege or prove the elements of fraud.  However, in Appellee's Complaint he alleged that he believed and reported that S&W's conduct "constituted illegal conduct in violation of federal securities laws and regulations." (JA0065)  This allegation was referenced in Appellee's Response to S&W's summary judgment motion.  (JA0125)  Appellee therefore asserted claims "concerning" shareholder fraud, although not actual shareholder fraud.  If this Court's decision regarding the issues before it necessitates further consideration by the District Court of its denial of S&W's motion for summary judgment, this matter should be remanded for reconsideration in light of this Court's decision.  *Wadler v. Bio-Rad Labs.*, 916 F.3d 1176 (9th Cir. 2019).

third prongs share the "common denominator" of conduct involving fraud, but that while "many" of the claims involving the second prong will also involve fraud, not all will. *Day*, 555 F.3d at 55. This should end this Court's inquiry into this issue. If the *Day* Court's decision does not end the inquiry, then proper statutory construction of the relevant provisions yields the same result.

When interpreting statutory language, courts must look to the language of the statute itself, "giving the words used their ordinary meaning." *Lawson v. FMR LLC*, 571 U.S. 429, 440 (2015). "In any matter involving statutory construction, judicial inquiry begins with the text of the statute." *O'Mahoney v. Accenture Ltd.*, 537 F.Supp.2d 506, 516 (S.D. N.Y. 2008). "When the statute's language is plain, 'the sole function of the courts' – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) *quoting United States v. Ron Pair Enters., Inc.* 489 U.S. 235, 241 (1989).

Further, "[s]tatutory construction is a holistic endeavor, … and, at a minimum, must account for a statutes full text, language as well as punctuation, structure, and subject matter." *Unites States Nat'l Bank v. Independent Ins. Agents of Am., Inc.* 508 U.S. 439, 455 (1993). "The plain meaning of a text will typically heed the commands of its punctuation." *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 186 F.3d 210, 215 (2d Cir. 1999). When grammatical structure of a sentence, specifically

the placement of a comma, mandates a particular construction, that construction should be honored.  *United States Int'l Bank*, 508 U.S. at 454.

Applying these rules of constructions, as the court in *O'Mahoney* reasoned, the "plain language of §1514A is unambiguous."  *O'Mahoney*, 537 F.Supp.2d at 517.  As that court noted:

> Section 1514A contains six provisions that enumerate six specific forms of misconduct which, if reported by an employee, protect the whistleblower from employer retaliation: (1) §1341 (mail fraud); (2) §1343 (wire fraud); (3) 18 U.S.C. §1344 (bank fraud); (4) 18 U.S.C. §1348 (securities fraud); (5) any rule or regulation of the SEC; or (6) any provision of federal law relating to fraud against shareholders.  The first four provisions are statutes that, as written by Congress, are not limited to types of fraud related to SOX.  By listing certain specific fraud statutes to which §1514A applies, and then separately, as indicated by the disjunctive "or", extending the reach of the whistleblower protection to violations of any provision of federal law relating to fraud against securities shareholders, §1514A clearly protects an employee against retaliation based upon the whistleblower's reporting of fraud under any of the enumerated states regardless of whether the misconduct relates to "shareholder" fraud.

*Id*.

The *O'Mahoney* court then noted that the Defendants' argument there, the same argument S&W advances here, conflicts with the "doctrine of the last antecedent."  *Id*.  As described by the Supreme Court in *Barnhart v. Thomas*, 540 U.S. 20 (2003), according to the "rule of the last antecedent … a limiting clause or phrase … should ordinarily be read as modifying only the noun or phrase that it immediately follows."  *Id*. at 26.  The *O'Mahoney* recognized that this grammatical rule "is not an absolute and can assuredly be overcome by other indicia of meaning,"

but noted that construing a statute in accord with the rule is "quite sensible as a matter of grammar." *O'Mahoney*, 537 F.Supp.2d at 517, *quoting Barnhart*, 540 U.S. at 26. Reasoning that it would not "lead to an unreasonable result to hold that an employee who alleges fraud under any of the enumerated statutes [and by extension to a violation of any rule or regulation of the SEC] is protected under §1514A," the *O'Mahoney* court rejected the same argument advanced by S&W here.   537 F.Supp.2d at 517.  As the First Circuit reasoned in *Lawson*, "the rule that we are to assume that Congress meant what it said when it enacts legislation applies throughout the Code, including SOX." *Lawson*, 670 F.3d 61, 75 (1st Cir. 2012). (Internal quotations omitted).

The Tenth Circuit came to the same conclusion in *Lockheed Martin Corp. v. Admin. Review Bd.*, 717 F.3d 1121 (10th Cir. 2013).  There, Lockheed advanced the same argument that S&W advances here.   The Tenth Circuit reasoned that "[b]ecause 18 U.S.C. §§ 1341, 1343, 1344, and 1348[2] are all clearly provisions of federal law, Lockheed's reading of the statute would render their enumeration in §1514A(a)(1) superfluous." *Id*. at 1130.  Because "it is a rudimentary canon of statutory construction that such superfluities are to be avoided," the *Lockheed* court rejected Lockheed's argument.

---

[2] Applying S&W's reasoning in particular to §1348 (securities or commodities fraud) renders the inclusion of this section completely superfluous as that section clearly "relat[es] to fraud against shareholders."

Further, the Tenth Circuit correctly noted that if Congress had intended to apply the "relating to fraud against shareholders" language to all of the enumerated offenses in §1514A(a)(1) it "could have accomplished that intention by limiting whistleblower protection under Sarbanes-Oxley only to an employee who reports conduct 'the employee reasonably believes constitutes a violation of any provision of Federal law relating to fraud against shareholders.'" *Id*. at 1131. "Because Congress did not so phrase the statute, the proper interpretation of §1514A(a) gives each phrase distinct meaning" and provides protection for a claimant who reports violations of any of the enumerated provisions in that section without the need to establish "such violations relate to fraud against shareholders." *Id*.

 S&W attempts to discredit the Tenth Circuit's reasoning by claiming that "the statutory text offered by the Tenth Circuit would eliminate all of the first two categories of violations, other than 15 U.S.C. §1348, the criminal provision relating to securities fraud." S&W explains that the Tenth Circuit's proposed language would eliminate reporting violations of wire, mail, and bank fraud because "although they are a ***means*** for engaging in securities fraud, they do not expressly relate to it." S&W Supplemental Brief, p. 13. (Emphasis in original).

However, S&W erroneously limits the "any provision of Federal law relating to fraud against shareholders" language proposed by the Tenth Circuit as meaning laws "***expressly***" related to "***securities fraud***." This is a clear departure from the

9

actual language used, as the term "expressly" is not contained in the text and is an overly restrictive application of the "related to" language.  The phrase "***relating to*** fraud against shareholders" is much broader and encompasses much more than merely provisions directly addressing "securities fraud."

The Tenth Circuit implicitly recognized this concept.  As that court reasoned, limiting §1415A(a)(1) reports to "violation[s] of any provision of Federal law relating to fraud against shareholders" would have achieved the intention S&W asserts that Congress had in that it would have applied to provisions of mail, wire, or bank fraud which pertain to, or have bearing on, or have some association or connection with, fraud against the shareholders.   However, "Congress did not so phrase the statute," and, as such, "the proper interpretation of §1512A(a) gives each phrase distinct meaning."  *Lockheed*, 717 F.3d at 1131.[3]

The employer made the same argument S&W makes here in *Yang v. Navigators Group Inc.*, 18 F.Supp.3d 519 (S.D.N.Y. 2014).  There, the court, noting that *Day* does not support such an argument, rejected it:  "Defendant argues that the SEC rules and regulations purportedly violated must be 'regulations prohibiting fraud.'  No Second Circuit case has so held.  The First Circuit has noted that 'many

---

[3] The Tenth Circuit's proposed language also indicates its disagreement with *Wadler's* holding and S&W's argument that "rules and regulations" of the SEC only encompasses administrative rules and regulations of the SEC and not statutory provisions.  The *Lockheed* court clearly believed that a reference to "any provision of Federal law" included the "rules and regulations of the SEC" provision in §1514A(a).

… violations of SEC rules … will also involve fraud' but did not hold that only those rules involving fraud are contemplated by §1514A. [citing *Day*]. As the statute plainly contemplates reporting of violations of 'any rule or regulation,' the Court declines to limit the scope of the statute to only SEC rules and regulations prohibiting fraud." *Id*. at 528, fn. 2.

Other cases have similarly held that reports of violations of SEC regulations do not require allegations of fraud. *Feldman v. Law Enforcement Assocs. Corp*, 779 F.Supp.2d 472, 492 (E.D.N.C. 2011) ("Disclosures made by employees concerning reasonably perceived violations of SEC rules governing internal control standards can constitute protected conduct under SOX."); *Smith v. Corning, Inc.*, 496 F.Supp.2d 244, 248-50 (W.D.N.Y. 2007) (the disclosure that a company was implementing a financial reporting program that was not GAAP-compliant was protected under SOX); *Leznik v. Nektar Therapeutics, Inc.*, 2007 DOLSOX LEXIS 96 (Dept. of Labor SAROX Nov. 16, 2007) ("employees disclosures about efforts to circumvent … internal controls are protected activities, because they address violations of SEC rules").

The *Thibodeau* decision cited by S&W also supports such a conclusion. *Thibodeau v. Wal-Mart Stores, Inc.*, 2020 DOL Ad. Rev. Bd. LEXIS 326 (December 17, 2020). There, the complainant reported what he believed to be attempts by other employees to circumvent the company's internal controls over financial reporting,

in violation of 15 U.S.C. §78m(b)(2) and others.  While the Administrative Review Board ("ARB") agreed with the employer that the Complainant had not engaged in protected activity, it was not because the Complainant had not alleged fraud against the shareholders.  Rather, ARB found that the "Complainant did not present evidence that the Estimating Department's reviews ensured, or were intended to ensure, that the transactions were recorded fairly, accurately, and in compliance with generally accepted accounting principles (GAAP) and other financial reporting rules, or that the evaluations otherwise affected the accurate and fair recording of Respondent's assets and transactions, or related to the company's accounting and audit function." *Id*. at *12.

That ruling was based on the failure to produce evidence of a violation of §78m(b)(2).[4]  ARB noted that "Complainant may have helped Respondent make wise economic decisions, but saving Respondent on construction costs is outside the scope of the SEC's rules for internal controls over financial reporting."  *Id*. at *13. While ARB did note that SOX "was not a general retaliation statute," it was referring to the exclusion of conduct that did not fall within the 'SEC's rules for internal controls over financial reporting."  ARB did NOT rule that such SEC rules must "relate to shareholder fraud."

---

[4] See p.21-22 below for a complete recitation of the content of §78m(b)(2).

The Fourth Circuit's holding in *Livingston v. Wyeth*, 520 F.3d 244 (4th Cir. 2008) does not support S&W's interpretation of §1514A(a)(1) advanced here. In *Wyeth*, that court, in a footnote containing pure dictum and without much analysis, noted that all of the categories of violations described in §1514A(a)(1), except the "rules and regulations of the SEC" category "refer explicitly to a company's *fraud*." *Id*. at 351, n. 1. The court found that the "rules and regulations of the SEC" category must also refer to "regulations prohibiting fraud" as "[t]o conclude otherwise would absurdly allow a retaliation suit for an employee's complaints about administrative missteps or inadvertent omissions from filing statements." *Id*.

First, as noted by S&W, an "absurd" result, which was the only stated reason for the *Wyeth* court's finding, does not create an ambiguity in statutory language. Further, similar to the concerns raised by the dissenting Justices in *Lawson* regarding the potential "floodgates" that could be opened allowing for claims by "nannies, housekeepers, and caretakers," the concern raised by the *Wyeth* court also seems "likely more theoretical than real."[5] *Lawson*, 571 U.S. at 472, 446.

The issue in *Wyeth* was objective reasonableness of the whistleblower's belief, not whether "relating to fraud against shareholders" modifies all three prongs

[5] Since enactment of SOX and the Supreme Court's decision in *Lawson*, there is no indication that nannies and housekeepers have inundated federal courts with SOX retaliation claims based on whistleblowing of suspected violations of SEC rules on parking lot usage or untruths conveyed over mail or the internet. There are checks on such absurd over-breadth, such as the objective reasonableness of a whistleblower's belief requirement. *See Day*, *supra*, and *Wyeth*, *supra*.

in §1514A. Indeed, the dictum contained in footnote 1 of the majority's opinion was immaterial to the "objective reasonableness" issue before that court.

The *Wyeth* majority in that erroneous dictum cites to one page out of legislative history for the proposition that SOX relates to fraud. *Wyeth*, 520 F.3d at 351, fn. 1. This is precisely the type of cherry-picking of legislative history that Justice Scalia admonished against in the concurring opinion of *Lawson*, 571 U.S. at 460. Of course, one of Congress' concerns behind SOX was fraud against shareholders. But to posit based on that that all three prongs of Section 1514A are modified by "relating to fraud against shareholders" is, at minimum, sloppy. In *Day,* the First Circuit already rejected such sloppy analysis by noting that while many of the rules and regulations of the SEC will directly relate to fraud against shareholders, not all will. Just as one part of legislative history in isolation mentions only fraud against shareholders, other parts also refer to protecting the market (as opposed to just shareholders) or anything enforced by the SEC. 149 Cong. Rec. S1725 (daily ed. Jan. 29, 2003) (Sen. Leahy); 148 Cong. Rec. S1783, S1791 (daily ed. March 12, 2002) (Sen. Leahy).

**B.     The captions relating to §1514A do not require that the "relating to fraud against shareholders" language modify all three prongs used in §1514A(a)(1).**

"'The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole,' not by looking at statutory terms in isolation." *Goncalves v. Reno*, 144 F.3d 110, 127 (1ˢᵗ Cir. 1998), quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997).   As noted above, the Supreme Court has already addressed the very titles and captions raised by S&W in support of their argument in *Lawson v. FMR LLC*, 571 U.S.  at 429.   There, FMR argued that §1514A's heading, "Civil action to protect against retaliation in fraud cases," subsection (a)'s caption. "Whistleblower Protection for Employees of Publicly Traded Companies," and the relevant public law section's caption, "Protection for Employees of Publicly Traded Companies Who Provide Evidence of Fraud," all required an interpretation that §1514A applied only to employees of "publicly traded companies."

The Supreme Court, however, disagreed, first noting that "[t]his Court has placed less weight on captions."  *Id*. at 446.  Further, the Supreme Court noted that "where, as here, 'the [statutory text] is complicated and prolific, headings and titles can do no more that indicate the provisions in a most general manner.'" *Id*., *quoting*

*Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528 (1947).  The Court held that despite the "under-inclusive" wording of the captions, the provision extended protection to employees of contractors who did work for public companies, even if those contractors were not themselves public companies.  *Id*.

Here, too, the references in the captions to "fraud cases" and "evidence of fraud" cannot be read to limit the potentially protected reports to only those that directly relate to shareholder fraud.  The Supreme Court has already recognized this in *Lawson*:

> The under-inclusiveness of the two headings relied on by the Court of Appeals is apparent.  The provision indisputably extends protection to employees of companies that file reports with the SEC pursuant to §15(d) of the 1934 Act, even when such companies are not "publicly traded."  And ***the activity protected under §1514A is not limited to 'provid[ing] evidence of fraud'; it also includes reporting violations of SEC rules or regulations***.

*Id*. (Emphasis added).

## C. The legislative history does not support S&W's claim the argument that the "relating to fraud against shareholders" language modifies all three prongs in §1514A(a)(1).

It is clear that the main purposes of SOX is not only the protection of shareholders and investors, but also to restore trust in and protect the financial markets.  *Lawson v. FMR LLC*, 571 U.S. at 432.  Section 1514A "was intentionally written to sweep broadly, protecting any employee of a publicly traded company

who took such reasonable action to try to protect investors and the market." 149 Cong. Rec. S1725 (daily ed. Jan. 29, 2003) (statement of Sen. Leahy).

It is noteworthy that none of the legislative history, nor any provision of SOX, limits Congress' intent to protecting only the shareholders of individual companies. Rather, Congress' intent was to protect "investors" and "shareholders" generally, and thereby also protect the market itself. Indeed, the language at issue, here, is similarly broad in that it references "fraud against shareholders," not fraud against "the company shareholders" or fraud against "shareholders of a reporting company."

The market realism behind SOX cannot be denied. Often, misinformation contained in a company's financial disclosures, while it may harm a purchaser of that company's stock who relies on the misinformation, may actually benefit other shareholders of that company who take advantage of an inflated price. Congress' intent was to protect *all* investors in securities and thereby protect the integrity of the market as a whole[6].

The references to "fraud" in the legislative history does not support the limited reading S&W advances here. Rather, because Congress intended to protect *all* shareholders and the financial market, it is not unreasonable to concluded that it intended to protect employees that report instances of mail fraud or wire fraud, even

---

[6] Cheating to manipulate the market, for example, by bribing foreign officials, by its nature, hurts some shareholders while favoring others. SOX was intended to protect the integrity of the market, which of course relates to protecting all shareholders. Enron's fraudulent numbers, for example, harmed some shareholders but not others (these who sold before Enron was found out).

17

those not "relating to fraud against shareholders". Such fraud, even if not directed at specific shareholders, can harm shareholders generally and impugn the integrity of the financial market. But the check against the danger of over-breadth is the requirement of objective reasonableness of a whistleblower's belief. *Day*, *supra*, and *Wyeth*, *supra*.

Similarly, it is not unreasonable to concluded that Congress intended to protect all reported violations of "rules and regulations" of the SEC, as the main purpose of the SEC is to protect all shareholders. *SEC v. World-Wide Coin Inv.*, 567 F. Supp. 724, 746 (N.D. Ga. 1983). As noted by the ARB in *Thibodeau v. Wal-Mart Stores, Inc.*, *supra*, "[o]ne of Congress's goals in protecting corporate whistleblowers is to address problems **before** investors are affected. Requiring an employee to essentially prove the existence of fraud before suggesting the need for an investigation would hardly be consistent with Congress's goal of encouraging disclosure." *Id.* at *22-23, *citing Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1001 (9th Cir. 2009). (Emphasis added).

The FCPA is an example of a rule or regulation of the SEC that, while not directly addressing shareholder fraud (such as Rule 10b-5), it nevertheless protects investors generally, and therefore the market, by requiring internal control procedures that ensure proper tracking of financial information that is ultimately included in the public disclosures required to be filed by public companies.

Reporting of problems with these internal controls *before* inaccurate information is publicly disclosed achieves Congress' intent of protecting all shareholders and the market.

**D.** **The section of the Foreign Corrupt Practices Act at issue, 15 U.S.C. §78m(B)(2) and (5), are provisions "relating to fraud against shareholders"; as such, while the Court's resolution of the current issue is "relevant" to the issues before it, such resolution is not "necessary" to resolve this case.**

There are three possible results from the current appeal: 1) This Court could answer the originally certified question in the affirmative and find that Congress' reference to "rules and regulations of the SEC" includes 15 U.S.C. §78m(b)(2) and (5) and answer the Supplementally briefed question in the negative and find that the "rules and regulations of the SEC" portion of §1514A(a)(1) is not modified by the "relating to fraud against shareholders" language. 2) This Court could answer the originally certified question in the affirmative and find that Congress' reference to "rules and regulations of the SEC" includes 15 U.S.C. §78m(b)(2) and (5) but the "rules and regulations of the SEC" portion is §1514A(a)(1) *is* modified by the "relating to fraud against shareholders" language. Or, 3) this Court could answer the originally certified question in the negative and find that Congress' reference to "rules and regulations of the SEC" does not include 15 U.S.C. §78m(b)(2) and (5) (which would render the question of whether the "rules and regulations of the SEC"

part of §1514A(a)(1) moot in this particular case).  Because 15 U.S.C. §78m(b)(2) and (5) does "relat[e] to fraud against shareholders," the District Court's denial of S&W's summary judgment motion was proper under any of these possible outcomes.  As such, while this Court's decision regarding whether the "rules and regulations of the SEC" provision includes §78m(b)(2) and (5), or whether those provisions (and the other provisions of §1514A(a)(1)) are modified by the "relating to fraud against shareholders" language is "relevant" to the issues before it, those decisions are not dispositive of this case.

Given the broad meaning applied to the term "relating to" there can be no dispute that reported violations of section of the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. §78m(b)(2) and (5) "relate" to shareholder fraud. Both the Supreme Court and the First Circuit have recognized that the term "related to" has a "broad definition in ordinary usage"; the term must be interpreted broadly to include any provision which "pertains to" or has some "bearing" or a "association or connection with" shareholder fraud. *See Morales v. TWA*, 504 U.S. 374, 384 (1992); *UPS v. Flores-Galarza*, 318 F.3d 323, 335 (1st Cir. 2003); *Nat'l Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 78-79 (1st Cir. 2006).  Congress charged the SEC with civil enforcement of the FCPA precisely because FCPA violations result in falsehoods on a company's books and records and violations of internal accounting controls obligations traditionally considered the securities law purview of the SEC.

*See* S. Rep. No. 95-114 at 11 (1977).    The very purpose of the FCPA, and its inclusion in the Securities Exchange Act, is to protect shareholders and the market.

As noted by Justice Ginsburg, reiterated by Justice Sotomayor in her dissent in *Lawson*, and also by S&W, Congress stated in the preamble to SOX that its objective was to "protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to securities laws."    *Lawson*, 471 U.S. at 451, 466.  As further noted by S&W, to accomplish this end, Congress took a variety of steps, including requiring management "to attest to the accuracy of internal controls and financial reports."  SW Supplemental Brief, p. 15.  There can be no doubt that the requirements in §78m(b)(2) and the prohibition found in §78m(b)(5) go directly to this objective and therefor "pertain to" or have some "bearing on" or "association or connection with" fraud against shareholders.

Section 78m(b)(2) provides:

(2) Every issuer which has a class of securities registered pursuant to section 78l of this title and every issuer which is required to file reports pursuant to section 78o(d) of this title shall –

(A) make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer;

(B) devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that—

(i) transactions are executed in accordance with management's general or specific authorization;

(ii)    transactions are recorded as necessary (I) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (II) to maintain accountability for assets;

(iii)    access to assets is permitted only in accordance with management's general or specific authorization; and

(iv) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences.

Section 78m(b)(5) states:

(5) No person shall knowingly circumvent or knowingly fail to implement a system of internal accounting controls or knowingly falsify any book, record, or account described in paragraph (2).[7]

The purpose of the requirement that companies create and maintain a "system of internal accounting controls" complying with the listed criteria is to "provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles." 17 C.F.R. §240.13a-15(f). "[T]he SEC's requirements for internal controls are concerned specifically with ensuring accuracy, completeness, and integrity of financial statements and public companies' accounting and auditing functions." *Thibideau*, *supra* at *12.

Given Congress' intent to identify and circumvent attempted fraud before investors are affected and the stated purpose of SOX to "protect investors by

---

[7] This provision also appears in SEC regulation at 13 C.F.R. §240.13b2-1.

improving the accuracy and reliability of corporate disclosures made pursuant to securities laws," the creation, maintenance, and enforcement of underlying internal accounting controls created pursuant to §78m(b)(2) and the prohibition against "knowingly circumvent[ing] or knowingly fail[ing] to implement a system of internal accounting controls or knowingly falsify[ing] any book, record, or account" found in §78m(b)(5) clearly "relate to" fraud against shareholders.[8]   These provisions directly address the requirements for ensuring the integrity of the underlying financial information which ultimately goes in to "the corporate disclosures made pursuant to securities laws" and therefore directly relate to "the accuracy and reliability" of such disclosures.  As such, a report of a violation of the these provisions "pertains to," has "bearing" on, or otherwise has an "association or connection with" preventing fraud against shareholders generally by identifying potential issues with the underlying financial information before such information is incorporated into disclosures made to shareholders and the public.  These provisions therefor have a "relation[ship] to fraud against shareholders" that the District Court deemed "imperative" in *Lawson*.  724 F.Supp.2d 141, 159 (D.Mass. 2010).

Therefore, when Appellee reported violations of §78m(b)(2) and (5) he either: reported a violation of a "rule of regulation of the SEC," reported a violation of a

---

[8] As discussed above, this language includes ***all*** shareholders, not just the shareholders of the individual company at issue.

"rule or regulation of the SEC that relates to fraud against shareholders," or reported a violation of "any provision of Federal law relating to fraud against shareholders." The District Court's denial of S&W's motion for summary judgment was correct.

## III.    CONCLUSION

For the foregoing reasons the Court should hold that the "relating to fraud against shareholders" language applies only to the third prong of violations enumerated in §1514A(a)(1) and not to the first two prongs.

If this Court agrees with Appellee's analysis on the original certified question that the provision for "rules and regulations of the SEC" includes §78m(b)(2) and (5) and that that provision is not modified by the "relating to fraud against shareholders" language, this matter should be remanded to the District Court to proceed to a trial on the merits.

If this Court agrees that the provision for "rules and regulations of the SEC" includes §78m(b)(2) and (5), but finds that that provision is subject to the "relating to fraud against shareholders" provision, but the Court agrees that §78m(b)(2) and (5) do relate to fraud against shareholders, then this matter should be remanded to the District Court to proceed to a trial on the merits, or alternatively remanded for further consideration of the issue by the District Court.

If this Court holds that the provision for "rules and regulations of the SEC" does not include §78m(b)(2) and (5), but finds that Appellee's claim of violations of §78m(b)(2) and (5) falls within "any provision of Federal law relating to fraud against shareholders, then this matter should be remanded to the District Court to proceed to a trial on the merits, or alternatively remanded for further consideration of the issue by the District Court.

Respectfully submitted,

EARL D. BAKER

By: /s/ Benjamin Rudolf
            Attorney for Plaintiff

Benjamin Rudolf
Murphy & Rudolf, LLP
One Mercantile Street
Worcester, MA 01609
Tel.: (508) 425-6330
Email: brudolf@murphyrudolf.com

By: /s/ John Y. Lee
            Attorney for Plaintiff

John Y. Lee
Lee & Breen, LLC
188 Industrial Drive, Suite 403
Elmhurst, IL 60126
Tel.: (312) 241-1420
Email: jlee@leebreenlaw.com

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the type-volume limitation provided in Federal Rule of Appellate Procedure 32 and this Court's June 10, 2022 Order because it contains less than 25 pages, excluding the parts of the Response exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  July 8, 2022

By: /s/ Benjamin Rudolf
Attorney for Appellee

Benjamin Rudolf
Murphy & Rudolf, LLP
One Mercantile Street
Worcester, MA 01609
Tel.: (508) 425-6330
Email: brudolf@murphyrudolf.com

By: /s/ John Y. Lee
Attorney for Appellee

John Y. Lee
Lee & Breen, LLC
188 Industrial Drive, Suite 403
Elmhurst, IL 60126
Tel.: (312) 241-1420
Email: jlee@leebreenlaw.com

**APPEAL NO. 21-8034**

**IN THE UNITED STATS COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

SMITH & WESSON, INC.,

Appellee,

v.

EARL DONALD BAKER,

Appellants.

**SUPPLEMENTAL RESPONSE BRIEF FILED BY PLAINTIFF-APPELLEE**

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Supplemental Response Brief filed by Plaintiff-Appellee with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system on July 8, 2022.

By: /s/ John Y. Lee
Attorney for Appellee

John Y. Lee
Lee & Breen, LLC
188 Industrial Drive, Suite 403
Elmhurst, IL 60126
Tel.: (312) 241-1420
Email: jlee@leebreenlaw.com